JOHN P. LYONS, RESPONDENT, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF MORRIS, APPELLANT.

Submitted March 23, 1914—Decided June 15, 1914.

1. The legislature has the power to compel a purely public corporation to pay a debt which, although not legally enforceable, has the force of a moral obligation.
2. The act of May 27th, 1913 (*Pamph. L.*, *p.* 810), which provides for the compensation and reimbursement of persons returned as elected to office under an invalid statute, is constitutional legislation by which the purely moral obligation of a public corporation is turned into a legally enforceable one.

On appeal from the Supreme Court.

The action in the Supreme Court was for compensation and the reimbursement of expenses of litigation and election brought by John P. Lyons under an act approved May 27th, 1913, the title of which is as follows:

"An act providing for compensation and reimbursement of persons returned as elected to be members of boards of chosen freeholders in any county of this state, and to whom certificates of election as such were issued, the title to whose office has been adjudged against such persons in appropriate legal proceedings, or where their title to such office has been adversely affected by judicial decision against other persons similarly situated with reference to membership in any such like board of chosen freeholders, by a court of competent

jurisdiction, within one year last past, and providing for the payment of the expenses incurred by any such persons in litigation in which their title to such office aforesaid was involved, in those cases where legal proceedings concerning such title were actually conducted, and also providing for compensation to be made to persons appointed or elected to office or position by persons returned and certified as elected to be members of boards of chosen freeholders as aforesaid, and acting or assuming to act as such boards." *Pamph. L.* 1913, *p.* 810.

Lyons was returned as an elected member of the small board of freeholders for the county of Morris at an election held on November 5th, 1912, and a certificate of election was duly issued to him.

On July 10th, 1913, a *quo warranto* proceeding was instituted by him and his associates against the members of the old board, which resulted in a judgment adverse to the relators because of defects in the legislative scheme pointed out in *Pierson v. Cady,* 84 *N. J. L.* 54.

On May 27th, 1913, and after this judgment was rendered, the legislature enacted the statute under which the present action was brought. The action was tried before Mr. Justice Parker, sitting without a jury and a judgment rendered for Lyons, whereupon this appeal was taken by the county of Morris.

For the appellant, *John M. Mills.*

For the respondent, *King & Vogt.*

The opinion of the court was delivered by

GARRISON, J. The only question presented by this appeal that is at all troublesome is as to the power of the legislature to compel counties in this state to pay out money to persons who were neither *de jure* nor *de facto* officers of such counties, for such is the scope of the. statute in question, whatever may be the facts of this particular case. If the statutory requirements were that services actually rendered to the counties

even in an unofficial capacity should be paid for, we should have no doubt as to the power of the legislature to turn such moral obligation into a strictly legal one. A long line of cases illustrates this rule of law. *Cleveland* v. *Board of Finance*, 38 *N. J. L.* 259; *Rader* v. *Union*, 39 *Id.* 509; *Mutual Benefit Co.* v. *Elizabeth*, 42 *Id.* 235; *Orville* v. *Woodcliff*, 61 *Id.* 107; *Rutgers College* v. *Morgan*, 70 *Id.* 474; *O'Neil* v. *Hoboken*, 72 *Id.* 67; *S. C.*, 73 *Id.* 190; *Morris and Essex R. R. Co.* v. *Newark*, 76 *Id.* 555; *Carlstadt National Bank* v. *Hasbrouck*, 83 *Id.* 383.

In each of the cases cited, however, the moral obligation that was turned into a legal one arose because of some service rendered to or benefit conferred upon the public corporation affected, such as the improvement of its highways, the building of water works, the drainage of swamps, the elevation of railroad tracks or the education of the young. Such cases are fully covered by the rule stated in several of these cases, viz., "The payment of a recognized moral obligation assumed for services rendered is within the legislative power." This statement of the rule is much narrower than that contained in Rader *v.* Union, which is relied upon as the authority therefor. In the Rader case the rule was stated to be "that the legislature has the undoubted right to compel a corporation of this character (*i. e.*, a public corporation) to pay a debt which although not legally enforceable carries with it the force of a moral obligation." This rule is based upon the political fact that such corporations are altogether public in their nature and uses and that, in the language of Chief Justice Marshall, their "whole interests and franchises are the exclusive property and domain of the government itself."

Is the rule thus stated broad enough to cover the legislative requisition in the present case? The question thus presented is evidently at bottom whether ·the compensation and reimbursement of citizens who have been elected to office under an invalid statute have, under the circumstances set forth in the statute, the force of a moral obligation? In its ultimate form the question is, Has a service been in fact

rendered or a benefit been conferred upon the public by such acceptance of office?

The answer to these questions is primarily for the legislature, not only because the action of that department of the government rests upon determinations of fact that it has the right to make for itself (*Hopper* v. *Slack,* 69 *N. J. L.* 562, 566) but also because such action involves a declaration of public policy which "is primarily the function of the law making body." *Raritan River R. R. Co.* v. *Traction Co.,* 70 *Id.* 732, 744.

The public policy plainly discernible in the legislation before us is that citizens should not through fear of just what has happened in the present case be deterred from accepting nomination and election to public office; while a second policy discernible is that if a citizen, who has so accepted public office, has, by reason thereof and solely because of legislative errors, been put to loss of time and expenditure of money, it is in the long run beneficial to the community that he should be compensated and reimbursed therefor rather than that he should, by bearing alone such unmerited loss, become a conspicuous warning to others to abstain from participating in the duties of local government. The deduction and declaration of a policy of this sort is essentially a legislative function, so that even if we held a different view, which we do not, we should not be at liberty to substitute our view for that of the legislature in regard to a matter that was clearly within its department and with respect to which there exists no constitutional interdict to its action.

That no constitutional interdict does exist is the conclusion we have reached after a careful examination of all the points discussed in the comprehensive brief of appellant's counsel.

We conclude therefore that it was within the province of the legislature to decide that the acceptance of public office under the act passed by it was so far a benefit to the community that such conduct should as a matter of wise policy be encouraged rather than penalized, and that the necessary expenditure of time and money by the citizen in complying

with this policy was one that carried with it a moral obligation of compensation and reimbursement of such citizen if through no fault of his the office to which he had permitted himself to be elected was held upon legal grounds to be non-existent. If the determination of these matters was within the domain and province of the legislature, as we think that it was, it follows from the rule stated in Rader *v.* Union that the legislature had the power to turn this moral obligation into a legally enforceable one, and this we think that it did by the statute under which this present action was brought.

The judgment of the Supreme Court is therefore affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, WHITE, HEPPENHEIMER, JJ.   12.

*For reversal*—None.